IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VINCENT TOLENTINO,** | : CIVIL ACTION NO. 3:19-CV-387 |
| Plaintiff | : |
| | : (Judge Conner) |
| v. | : |
| | : |
| **URBANICK, SGT. MCCULLOUGH, DUNN, BOOHER, and SUPERINTENDENT MARSH,** | : |
| | : |
| Defendants | : |

## MEMORANDUM

Plaintiff Vincent Tolentino, a prisoner presently confined at the State Correctional Institution at Somerset in Somerset, Pennsylvania, filed this 42 U.S.C. § 1983 amended complaint alleging an Eighth Amendment failure to protect claim regarding an assault he sustained by another inmate while incarcerated in the residential treatment unit ("RTU") at the State Correctional Institution at Benner in Bellefonte, Pennsylvania. (Doc. 79.) Defendants have filed a motion for summary judgment, which plaintiff has opposed. (See Docs. 102, 111.) For the reasons that follow, the court will grant in part and deny in part the motion.

### I.   Background

#### A.   Allegations of the Amended Complaint

At all times relevant to the amended complaint, plaintiff was incarcerated at SCI Benner. He alleges that he was assaulted by another inmate, Joseph Kent, on February 7, 2019, and that defendants were aware of Kent's desire to harm other individuals but failed to protect him from this assault. (See generally Doc. 79.)

Specifically, on February 7, 2017, at around 7:00 a.m., plaintiff witnessed Kent yelling at defendant McCullough in the RTU office. (Id. at 2.) When plaintiff returned from breakfast, Kent attacked and assaulted him. (Id.)

Plaintiff alleges that his assailant repeatedly told defendants that he desired to inflict harm on other inmates in the RTU. (Id. at 1.) On one occasion, Kent purportedly told non-party inmate Cahill that he was going to kill him. (Id.) Cahill reported this to defendants Urbanick and Dunn. (Id.) In addition, Kent allegedly told non-party Officer Bender that he wanted to kill inmate Rozmakowski, and Officer Bender reported this threat to Rozmakowski with the warning that he should watch his back. (Id.) Defendants Urbanick, Dunn, and McCullough allegedly met with Kent on several occasions in the unit office. Plaintiff alleges that these meetings were a result of Kent's violent and irrational statements, however no further action was taken. (Id.)

### B. Defendants' Statement of Facts

Defendants have filed a very brief statement of material facts, stating generally that (1) defendants Superintendent Marsh, Deputy Superintendent Booher, and Dunn were not present for the assault, and (2) none of the defendants were ever informed of any desire by Joseph Kent to assault any other inmate, including plaintiff. (Doc. 109 at 1-2.)

Documents attached to the statement of facts, which include numerous employee reports of the incident, provide a broader picture of the events that occurred. Specifically, at around 7:44 a.m. on February 7, 2019, Officer Bender observed Kent assaulting plaintiff with a closed fist in the dayroom. (Doc. 109-1 at

2

4.) Officer Bender notified the control center by radio and defendant Officer McCullough arrived. (Id.) Kent was given multiple orders to stop, and after he refused to do so, the officers applied pepper spray to stop the assault. (Id.) Plaintiff was secured in handcuffs by Officer Bender while Officers Litzinger and McCullough secured Kent with handcuffs. (Id.) Both inmates were taken to the medical department for assessment. (Id.) Kent was found to have a superficial abrasion on his knuckle, and plaintiff was found to have a loose tooth and was referred to the dental service. (Id.)

Defendants attach to their statement of facts each defendant's response to plaintiff's interrogatories, which provide more specific information as to the knowledge of each defendant. As to defendant Dunn, she states that she had one meeting with Kent in early January 2019 while she was assigned to the RTU. (Doc. 109-2 at 1.) She did not report any violent behavior to anyone, because Kent did not express any violent behaviors or thoughts during her time in the RHU nor did she observe any. (Id. at 2, 8.) In addition, she states that during the time period of January 7, 2019, through January 30, 2019, no inmate or other staff reported a concern about Kent to her. (Id. at 4, 6.) Further, she states that no reports about Kent were made to defendants Booher, Marsh, or Urbanick during their weekly meetings because she received no reports about him. (Id. at 7.) In late January 2019, she was reassigned to general population. (Id. at 1.)

Defendant Urbanick states that inmate Cahill had earned resident of the week and his photograph was displayed in the RTU. Someone wrote "rat" on the photograph, and it was believed that Kent had done so. Cahill expressed to her that

3

he did not know why Kent would do that, but he never advised her that Kent had threatened him. (Doc. 109-4 at 2-3, 4.) In addition, no staff member or inmate ever advised her that Kent wanted to assault anyone. (Id. at 4, 5.) Further, Kent never told her that he desired to harm other inmates or that he would hurt other inmates. (Id. at 6.) She does not recall ever discussing or reporting Kent's behavior at the RTU weekly meetings or otherwise with defendants Booher and Marsh. (Id. at 7, 8.)

Defendant McCullough states that no inmate ever reported any concerns to him that Kent might become violent or assault someone. (Doc. 109-3 at 3.) Defendant McCullough also states that at no time did Kent tell him that he would harm other inmates, nor did any staff report to him that Kent made any such statements or threats. (Id. at 6, 7.) Further, defendant McCullough states that he never told any other staff members that Kent might harm other inmates, because there was no reason to do so. (Id. at 8.) Defendant Marsh states that he, in fact, is not present at the weekly RTU meetings and was not aware of any specific concerns about Kent. (Doc. 109-5 at 2, 7.)

Defendant Booher states that he would not expect unit team members to report any problematic inmates to him because his position is the deputy superintendent of centralized services, and he does not oversee the unit team members or the RTU. (Doc. 109-6 at 3, 7.) He does not recall defendants Dunn or Urbanick ever telling him that Kent was a danger to others. (Id. at 4.)

C. **Plaintiff's Response to the Statement of Facts**

Plaintiff has not specifically opposed or refuted the above statements of fact proffered by defendants. He generally states that "Defendants Urbanick, Dunn,

4

[and] McCullough had first hand knowledge Kent was a danger to others" and that "Defendants Marsh and Booher knew or should've known Kent was a danger to others." (Doc. 111 at 1.) Plaintiff does, however, include sworn and notarized affidavits from himself and non-party inmate Cahill both dated April 3, 2019, which, in light of plaintiff's *pro se* status, the court will consider to determine whether any material facts are disputed.

In his affidavit, Cahill states that he has been incarcerated at SCI Benner since December 22, 2015, and has been housed in the RTU. (Doc. 111 at 7.) He has never received any misconduct reports. (Id.) He is a Christian and seeks to show kindness to everyone, including Kent when he first arrived in the RTU some time in winter 2019. (Id.) However, at some point, he heard Kent brag about the pleasure he received from killing his girlfriend with a hatchet. (Id.) This statement was concerning to Cahill, who started to distance himself from Kent. (Id. at 7-8.) Cahill states that for some unknown reason, Kent believes that he is a rat. (Id. at 8.) Kent supposedly told him and other inmates in the RTU that Kent was going to kill Cahill. (Id.) Cahill reported these threats to defendant Dunn, who told him that Kent was not going to hurt anyone. (Id.) Cahill described her response as "very casual." (Id.) He then reported his safety concerns to unit manager defendant Urbanick. She responded that "[t]here is really nothing that I can do. This is prison and even I could get killed in here." Cahill states that this report was made a week prior to Kent's assault of plaintiff. (Id.) Cahill claims that he was so afraid of Kent that he would not leave his cell to eat meals, and he even missed a school class. (Id.) Cahill believes that if he did not stay in his cell during this time, Kent

5

probably would have assaulted him. (Id.) These facts directly contradict defendants Dunn and Urbanick's assertion that they never received notice that Kent intended to harm other inmates.

In his affidavit, plaintiff states that he has been in the RTU for two years at SCI Benner and was thus on good speaking terms with non-party Officers Bender and Heister in that unit. (Doc. 111 at 10.) In the weeks leading up to the assault, plaintiff, Bender, and Heister spoke quite often about Kent due to Kent's "violent and irrational statements." (Id.) The officers allegedly advised plaintiff that Kent threatened to kill Rozmakowski. They also purportedly told plaintiff that Cahill was so afraid of Kent's threats that he would not leave his cell to eat any meals. (Id. at 11.)

Plaintiff spoke with Rozmakowski about Kent, who expressed his concerns. Rozmakowski stated that he went to defendant Dunn about the threat but he said, "she's dippy and didn't even care." (Id.) This fact also directly contradicts defendant Dunn's statement that she never received notice that Kent intended to harm another inmate.

Plaintiff states that prior to the assault, he witnessed Kent in the office with defendants Urbanick, Dunn, and McCullough on two separate occasions.[1] After one of those occasions, Officer Heister allegedly informed plaintiff that Kent told the unit staff that he does not like the inmates in the RTU and wanted to go to the RHU instead. (Id.) Heister supposedly told plaintiff that Kent offered to initiate a fight

---

[1] He states that the top half of the door to the office was plexiglass so he could see inside. (Id.)

6

with McCullough if necessary in order to be placed in the RHU.  Defendant McCullough apparently responded that such action was inadvisable.  (Id.)  Importantly, however, nothing in this alleged conversation between Kent and McCullough suggests that Kent threatened or intended to harm another inmate.

One evening, while retrieving paperwork from the desk, plaintiff heard Kent ask Officer Heister, "what do I have to do to go to the hole." (Id. at 12.)  Officer Heister sent Kent to his cell and reported this to non-party Sergeant Koons, who spoke with Kent in the office for approximately ten minutes.  (Id.)  Plaintiff stated to Officer Heister that if Kent were in his former prison, Kent would have been gone a long time ago.  (Id.)  Heister responded that he did not know why they were not doing anything since Heister had told them about Kent on several occasions.  (Id.)  It is unclear who "they" are from the affidavit.

## II.     Legal Standard

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 250.  The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. See Celotex Corp. v. Carrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

### III.  Discussion

Plaintiff has brought his Eighth Amendment failure to protect claim pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

8

> be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)).

"[T]he Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials 'a duty to protect prisoners from violence at the hands of other prisoners.'" Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). "Still, not 'every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety.'" Id. at 367 (quoting Farmer, 511 U.S. at 834 (ellipsis omitted)).

To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. Id. The first element is an objective inquiry of whether the official "knowingly and unreasonably disregarded

an objectively intolerable risk of harm." Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001).  The second element is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."  Bistrian, 696 F.3d at 367 (quoting Beers-Capitol, 256 F.3d at 125).

"A plaintiff can . . . prove an official's actual knowledge of a substantial risk to his safety 'in the usual ways, including inference from circumstantial evidence' . . . [i]n other words, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. (quoting Farmer, 511 U.S. at 842).

It is undisputed that defendants Marsh and Booher lacked knowledge of any violent tendencies or threats made by Kent against another inmate.  Plaintiff has adduced no evidence controverting these facts.  In light of the undisputed record, defendants Marsh and Booher could not be deliberately indifferent to any risk to plaintiff, and they are entitled to summary judgment.

The court finds that summary judgment is also proper as a matter of law as to defendant McCullough.  Plaintiff's facts, taken as true, that Kent yelled at defendant McCullough in the office and that Kent offered to fight defendant McCullough in order to be transferred to the RHU do not refute the dispositive fact that defendant McCullough lacked any knowledge of Kent's alleged violent tendencies towards other inmates.  Under the failure to protect analysis, the risk must be one to "*inmate* health or safety."  Farmer, 511 U.S. at 837 (emphasis added).  Any risk of which defendant McCullough knew from his conversation with Kent was to him personally, a staff member, and not to other inmates.  The court can discern no risk

10

to inmate safety, much less a substantial one, because an inmate yelled at an officer and requested a change of housing assignment, even if he suggested a fight with a staff member to obtain the housing change.  Without evidence that McCullough knew or had reason to know of Kent's intent to assault another inmate, defendant McCullough lacked the deliberate indifference necessary to state a failure to protect claim.

      The court cannot, however, grant summary judgment in favor of defendants Dunn and Urbanick.  Although both profess to have no knowledge of Kent's threats of harm or violence to other inmates, plaintiff has disputed this fact by statements from inmates Cahill and Rozmakowski.  Cahill stated that he reported a threat on his life to defendants Dunn and Urbanick, and Rozmakowski told plaintiff that he reported the threat on his life to defendant Dunn.  That Kent threatened the lives of two other inmates in the RTU could present sufficient notice of a substantial risk of harm to the inmates in the RTU to which both defendants were deliberately indifferent, as plaintiff states that no further action was taken.  It may be that further action was taken; however defendants have put forth no such evidence.  Summary judgment will be denied as to defendants Urbanick and Dunn.

## IV.     Conclusion

For the foregoing reasons, the court will grant summary judgment in favor of defendants Marsh, Booher, and McCullough, and deny it as to defendants Dunn and Urbanick. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     March 17, 2021